**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Northwestern Ohio Administrators, Inc., | : | Case No. 3:12 CV 424 |
| Plaintiff, | : | |
| v. | : | |
| Robert Laas, | : | **MEMORANDUM** |
| Defendant, | : | **AND ORDER** |

**I. INTRODUCTION**

Plaintiff Northwestern Ohio Administrators, Inc. ("Plaintiff") seeks: (1) a judgment against Defendant Robert Laas, aka Sam Laas, d/b/a L&S Roofing Company ("Defendant") in the amount of $136,463.57 for contributions, liquidated damages, and audit costs for its payroll audit liability for the period October 1, 2006 through July 31, 2010; (2) interest on the unpaid contributions due and owing, at the prescribed rate; and (3) attorneys' fees (Docket No. 1, p. 5 of 6). Pending is Plaintiff's Motion for Summary Judgment (Docket No. 13), filed on July 9, 2012, and Defendant's Opposition (Docket No. 18), filed on August 20, 2012. For the reasons that follow, the Magistrate denies Plaintiff's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

Plaintiff is a non-profit corporation organized under the laws of the State of Ohio, having its principal place of business in Toledo, Lucas County, Ohio (Docket No. 1). Plaintiff's purpose is to enter into agreements, commonly known as Collective Bargaining Agreements ("CBAs"), with certain employee benefit plans, trusts, and funds maintained and administered in the construction industry on behalf of various employee unions (Docket No. 13, p. 2 of 10). Plaintiff is authorized and obligated to collect contributions and deductions from union employers due and owing for health and welfare benefits, pension benefits, vacation pay, administrative apprenticeship and promotional funds, and dues and assessments pursuant to the terms of these CBAs (Docket No. 13, p. 2 of 10).

Defendant is an individual and resident of the State of Ohio, doing business as L&S Roofing Company ("L&S") (Docket No. 13, p. 2 of 10). L&S performs roofing work throughout the northern portion of Ohio (Docket No. 13, p. 2 of 10). To accomplish this work, L&S employs individuals represented by local construction trade unions, including Local Union No. 134 of the United Union of Roofers, Waterproofers and Allied Workers ("Roofers Union"), and Local Union No. 33 of the Sheet Metal Workers' International Association ("Metal Workers' Union") (Docket No. 13, p. 3 of 10).

As an employer of union employees, L&S agreed to be bound by the terms of two CBA's: (1) one entered into by and between the Toledo Area Roofing Contractors Association, Inc. and the Roofers Union; and (2) one entered into by and between the Sheet Metal Contractors Association of Northwest Ohio and the Metal Workers' Union (Docket No. 1, Attachment 2; Docket No. 13, Attachment 1, p. 2 of 4). L&S also agreed to be bound by the separate

agreements and Declarations of Trust ("Governing Documents") contained in those CBAs (Docket No. 1, Attachment 1, pp. 9-10 of 20; Attachment 2, p. 15 of 21). Those Governing Documents set forth various rules, regulations, resolutions, and amendments establishing employee benefit plans promulgated by the trustees of the plans (Docket No. 1, Attachment 1, pp. 9-10 of 20; Attachment 2, p. 15 of 51).

The CBAs and Governing Documents require L&S to compile and submit payroll information and data with respect to all union employees, and also to make fringe benefit contributions on behalf of those employees in an amount specified therein (Docket Nos. 1, Attachment 1, pp. 9-10 of 20; Attachment 2, pp. 24-26 of 51). These payments must be made no later than the fifteenth day of the month following the month during which the union employees perform the work (Docket Nos. 1, Attachment 1, p. 11 of 20; Attachment 2, p. 27 of 51). Failure to submit such information and payment in a timely manner places an employer on delinquent status (Docket Nos. 1, Attachment 1, p. 11 of 20; Attachment 2, p. 27 of 51).

Under both CBAs, if an employer "has not remitted the total fringe benefit and payroll deductions due and owing . . . and filed the official reporting forms . . . said [e]mployer shall be liable to the Trustees of each employee benefit plan as to which the said [e]mployer is in default for liquidated damages" (Docket Nos. 1, Attachment 1, p. 11 of 20; Attachment 2, pp. 27-28 of 51). Pursuant to the Governing Documents, liquidated damages are assessed against delinquent employers in an amount equal to five percent (5%) of the total delinquent contribution for the first and second delinquent months (Docket No. 13, Attachment 1, p. 3 of 4). For each subsequent month that the contributions remain unpaid, liquidated damages accrue at the rate of one percent (1%) of the total delinquent amount (Docket No. 13, Attachment 1, p. 3 of 4). In the

event legal proceedings are initiated, liquidated damages are assessed in an amount "equal to the greater of twenty percent (20%) of the unpaid contributions or interest at the rate of ten percent (10%) per annun on the unpaid contributions" (Docket No. 13, Attachment 1, p. 3 of 4). If an audit of the delinquent employer's payroll records is conducted, and the percentage of error is found to be more than five percent (5%), the delinquent employer is responsible for the costs of the audit (Docket No. 13, Attachment 3, p. 1 of 64).

Plaintiff alleges L&S only submitted partial reports and payments for only some of its union employees during the period from October 1, 2006, to July 31, 2010 (Docket No. 13, Attachment 1, p. 3 of 4). On January 20, 2012, Plaintiff conducted an audit of L&S payroll records (Docket No. 13, Attachment 3, p. 1 of 64). This audit revealed $110,491.10 in delinquent contributions (Docket No. 13, Attachment 3, p. 1 of 64). L&S was assessed a total of $125,414.46 in owed benefit contributions and fees: $110,491.10 in delinquent contribution payments, $11,049.11 in liquidated damages, and $3,874.25 for the cost of the audit (Docket No. 13, Attachment 3, p. 1 of 64). Defendant disputes Plaintiff's allegation of partial payment (Docket No. 18).

### III. PROCEDURAL HISTORY

On February 12, 2012, Plaintiff filed suit against Defendant seeking a judgment against L&S for $136,463.57 (Docket No. 1). Plaintiff also sought interest on L&S's unpaid contributions as well as reasonable attorneys' fees associated with the action (Docket No. 1). After being granted an extension on April 2, 2012 (Docket No. 6), Defendant submitted his Answer on April 20, 2012, essentially denying all allegations in the Complaint (Docket No. 8).

On July 9, 2012, Plaintiff filed a Motion for Summary Judgment, now pending before

this Court, alleging that there is no genuine issue of material fact with regard to Defendant's monetary obligation (Docket No. 13). On July 30, 2012, Defendant requested, and was granted, an extension of time to respond to Plaintiff's Motion (Docket No. 15). Defendant requested, and was granted, a second extension of time to respond on August 10, 2012 (Docket No. 16). On this same date, the parties stipulated to the jurisdiction of the undersigned Magistrate for further handling of the case (Docket No. 17). Defendant filed its Opposition to Plaintiff's Motion on August 20, 2012 (Docket No. 18).

On August 28, 2012, Plaintiff requested an extension of time to file its Reply Brief in Support of its Motion (Docket No. 19). Defendant consented to this request (Docket No. 23). Plaintiff's deadline was extended until November 15, 2012 (Docket 24); however, the Reply Brief was not filed. Plaintiff's Motion for Summary Judgment is, therefore, now ripe for decision.

### IV. JURISDICTION

This action is brought before this Court pursuant to § 301 of the Labor Management Relations Act of 1947, as amended ("LMRA") (29 U.S.C. § 185), and §§ 502 and 515 of the Employment Retirement Income Security Act of 1974, as amended ("ERISA") (29 U.S.C. §§ 1132 and 1145) (Docket No. 1). The district courts of the United States have exclusive jurisdiction to hear matters brought under both the LMRA and ERISA, without regard to the amount in controversy or the citizenship of the parties. *See* 29 U.S.C. § 1132 (e) and (f); 29 U.S.C. § 185(a).

### V. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party bears "the initial burden of proving that no genuine issue of material fact exists." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Averill v. Gleaner Life Ins. Soc'y*, 626 F.Supp.2d 756, 761 (N.D. Ohio 2009) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden shifts, Rule 56(e) requires the nonmoving party to "go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Averill*, 626 F.Supp.2d at 761 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The nonmoving party "cannot rest on its pleadings or merely reassert its previous allegations." *Averill*, 626 F.Supp.2d at 761. It is "insufficient 'simply [to] show that there is some metaphysical doubts as to the material facts.'" *Id*. (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor." *Averill*, 626 F.Supp.2d at 761 (*citing Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992)). Summary judgment will only be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Averill*, 626 F.Supp.2d at 761 (*citing Celotex,* 477 U.S. at 322); *see also* FED.R.CIV.P. 56(c).

## VI. DISCUSSION

### A. PLAINTIFF'S ARGUMENT

In its Motion for Summary Judgment, Plaintiff alleges: (1) L&S failed to submit certain payments for October 1, 2006, to July 31, 2010, in a timely manner despite its obligation to do so; and (2) L&S is liable for attorneys' fees and court costs pursuant to the Governing Documents and § 502 of ERISA (Docket No. 13).

### B. DEFENDANT'S ARGUMENT

Defendant disagrees with Plaintiff's allegations, arguing that Plaintiff's audit contains inaccurate assumptions and calculations (Docket No. 18).

### C. DISCUSSION

#### 1. ERISA

ERISA subjects employee benefit plans to federal regulations and is designed to promote the interests of those employees under the employee benefits plans. *Shaw v. Delta Airlines*, 463 U.S. 85, 90 (1983). Congress enacted ERISA in 1974 after it determined that:

> The growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial . . . [and] the continued well-being and security of millions of employees and their dependents are directly affected by these plans . . . [and because of] the lack of employee information and adequate safeguards concerning their operation . . . it is therefore desirable in the interests of employees and their beneficiaries . . . that the minimum standards be provided assuring the equitable character of such plans and their financial soundness.

*In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 818 (S.D. Ohio 2004).
While ERISA does not mandate employers provide any particular benefits, it does provide

various uniform standards, including rules regarding reporting, disclosure, and fiduciary responsibility. *Id*. at 91. To achieve its goal, ERISA requires employers to make contributions that would produce pension plan assets sufficient to meet future vested pension liabilities. *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Company*, 513 U.S. 414, 415 (1995).

There are a variety of means by which an employer can violate ERISA, one of which is failure to make employer contributions as required by a collective bargaining agreement. 29 U.S.C. § 1145. To remedy this situation, ERISA allows a federal court to award the employee benefit plan:

> (A) the unpaid contributions
> (B) the interest on the unpaid contributions
> (C) an amount equal to the greater of:
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate

29 U.S.C. § 1132 (g)(2)(A)-(E).

### 2. CBA AND GOVERNING DOCUMENT EMPLOYER CONTRIBUTIONS

As stated in Part II, *supra*, under the terms of the CBA and Governing Documents, L&S is required to compile and submit payroll information and data with respect to employees who are subject to the CBAs, and also to make fringe benefit contributions on behalf of those employees in the amount specified therein (Docket Nos. 1, Attachment 1, pp. 9-10 of 20; Attachment 2, pp. 24-26 of 51). These payments must be made on or before the fifteenth day of the month following the month when the work was performed (Docket Nos. 1, Attachment 1, p.

11 of 20 ; Attachment 2, p. 27 of 51), otherwise the employer will be placed on delinquent status (Docket Nos. 1, Attachment 1, p. 11 of 20; Attachment 2, p. 27 of 51).

### 3. DEFENDANT LIABLE FOR UNPAID CONTRIBUTIONS

Defendant disputes Plaintiff's allegation of unpaid employee benefit contributions (Docket No. 18). In his Answer to Plaintiff's Motion for Summary Judgment, Defendant alleges that Plaintiff's audit, conducted on January 20, 2012, contains multiple inaccurate assumptions and calculations (Docket No. 18, pp. 2-7 of 8).

First, Defendant alleges that Plaintiff relies on the affidavit testimony of its collection manager, Phil Smart ("Mr. Smart") in moving for summary judgment (Docket No. 18, p. 4 of 8). According to Defendant, Mr. Smart has no first-hand knowledge of any of the information contained in that audit and alleges that, since Mr. Smart did not conduct the audit himself, he cannot "vouch for the accuracy of the assumptions made by the auditor, the methods employed by the auditor or the reliability of the claimed results" (Docket No. 18, p. 4 of 8). Therefore, according to Defendant, Mr. Smart's affidavit testimony cannot be considered as reliable summary judgment evidence (Docket No. 18, p. 4 of 8).

Second, Defendant contests the audit's inclusion of several alleged L&S employees (Docket No. 18, pp. 5-7 of 8). Of the thirteen specific individuals named in the audit, Defendant denies knowing one of them altogether (Daniel Laas), and alleges that four of the individuals (Gary Moon, a.k.a. Gary Wietrykowski, Tim Gable, Mike Rezgalski, and Ryan Rezgalski) worked only on residential roofing projects (Docket No. 18, pp. 5-7 of 8). According to Defendant, the CBAs cover only those employees that work on commercial projects (Docket No. 18, pp. 5-7 of 8). Defendant also alleges that Gary Wietrykowski is not a union member and is

therefore not subject to the bargaining agreement (Docket No. 18, p. 5 of 8).

Third, Defendant claims that the auditor included in his calculations checks to several employees that were for the specific purpose of fuel, materials, and equipment purchases and reimbursements, not wages (Docket No. 18, p. 6 of 8). According to Defendant, such payments are not covered under the CBAs (Docket No. 18, p. 6 of 8). Defendant also alleges that the audit improperly included loan payments to Defendant's son, Josh Laas, specifically identified as such in the memo line, as well as cash advances made to Defendant in his position as owner of L&S (Docket No. 18, p. 6 of 8). Defendant claims that the audit improperly included check payments to Defendant's other son, David Laas (Docket No. 18, p. 7 of 8). According to Defendant, David Laas was never employed as a roofer for L&S and any payments made to him should not be included for purposes of contribution calculations (Docket No. 18, p. 7 of 8).

Finally, Defendant alleges that the auditor based his calculations primarily on a twenty dollar per hour wage (Docket No. 18, p. 5 of 8). Defendant claims that he pays most of his commercial roofer twenty-five dollars per hour, with the exception of his brother, Doug Laas, whom he pays $26.85 per hour (Docket No. 18, p. 5 of 8). As a result of this alleged miscalculation, the required contributions appear to be under-reported (Docket No. 18, p. 5 of 8). However, according to Defendant, if the correct hourly rates are utilized, an audit should reveal that the benefits have been properly paid (Docket No. 18, p. 5 of 8).

As stated in Section V, *supra*, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, Plaintiff bore the "burden of proving that no genuine issue

of material fact exists." *Vaughn*, 269 F.3d at 710. Once satisfied, the burden shifted to Defendant to "set forth specific facts showing that there is a genuine issue for trial." *Averill*, 626 F.Supp.2d at 761. Defendant's Opposition to Summary Judgment is quite detailed and certainly calls into question the accuracy of Plaintiff's third-party audit. The allegations presented by Defendant in its Opposition go far beyond the basic allegations set forth in its Answer to the Complaint (Docket No. 18). Defendant's incorporation of these allegations casts serious doubt on the validity of Plaintiff's claim. In a motion for summary judgment, this Court is required to construe all evidence "in the light most favorable to the non-moving party." *Averill*, 626 F.Supp.2d at 761. Plaintiff has failed to rebut the allegations of Defendant; even after making a motion to extend the time to reply to Defendant's Opposition, Plaintiff failed to do so. Because Plaintiff has failed to show that there is "no genuine issue as to any material fact," this Court must deny Plaintiff's Motion for Summary Judgment.

### 4.     LIQUIDATED DAMAGES AND AUDIT FEES

As stated in Section II, *supra*, an employer is only liable for liquidated damages once on delinquent status. Because this Court cannot yet find that Defendant was delinquent in making its benefit contributions, it cannot pass judgment on Plaintiff's right to liquidated damages at this time.

Similarly, a finding of Defendant's liability for payment of audit fees would be premature. A delinquent employer may only be held responsible for the costs of the audit if he is found to be a delinquent employer. Because this Court has not yet found Defendant to be a delinquent employer, summary judgment with regard to payment of audit fees cannot be awarded at this time.

**5.     ATTORNEYS' FEES**

Plaintiff is correct in stating that the Governing Documents require a delinquent employer to cover the costs of attorneys' fees, related expenses, and court costs expended by a plaintiff to enforce compliance (Docket No. 13, p. 8 of 10). However, since Defendant has not yet been deemed a delinquent employer, the Court cannot award attorneys' fees at this time.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate denies Plaintiff's Motion for Summary Judgment in its entirety.

FURTHER, the Court schedules this case for a non-jury trial on Tuesday, January 29, 2013 at 9:00 a.m. Trial Order to issue.

**SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:   November 29, 2012